## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LEONDRA TAYLOR, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| DELTA AIR LINES, INC., | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Leondra Taylor ("Plaintiff" or "Ms. Taylor"), by and through undersigned counsel, and files this Complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") against Defendant Delta Air Lines, Inc. ("Defendant" or "Delta") and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action to recover damages for Defendant's violation of her rights and for Defendant's unlawful retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq* ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

3.

Defendant is subject to specific jurisdiction in this Court over the claims asserted in this action. In addition, the acts and omissions that give rise to Plaintiff's claims occurred in this District. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. §1391 and 42 U.S.C. §2000(e)-5(f).

## PARTIES

4.

Plaintiff is an African American citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## ADMINISTRATIVE PROCEDURES

7.

Plaintiff timely filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

8.

Upon Plaintiff's request, the EEOC issued Plaintiff a Notice of Right to Sue on May 11, 2022, with respect to Plaintiff's EEOC Charges, entitling an action to be commenced within ninety (90) days of receipt of the notices.

9.

This action has been timely commenced.

## FACTUAL ALLEGATIONS

10.

 Defendant is now, and at all times relevant hereto, has been an employer subject to Title VII and Section 1981.

11.

Plaintiff is an African American woman.

12.

Plaintiff worked as a Flight Attendant for Northwest Airlines before it merged with Delta in 2008/2009.

13.

In or about early November 2020, Base Manager Ms. Anna C. Perry and Human Resource Manager Ms. Janelle Gaines contacted Plaintiff Ms. Leondra Taylor concerning a Facebook post made by a fellow Flight Attendant, Ms. Vivian Nguyen.

14.

Ms. Nguyen's post, made over a month prior to Ms. Taylor's conversation with Ms. Perry and Ms. Gaines, included a photograph of Former First Lady Michelle Obama next to a photo of a monkey dressed in similar clothes, and had the caption "His escape from pregnancy…". Ms. Nguyen included a message, "Yeah haha" with a crying laughing emoji.

15.

Ms. Taylor confirmed that she had seen the Facebook post.

16.

This post had racial implications that offended Ms. Taylor.

17.

Defendant deemed Ms. Nguyen to have violated its Social Media Policy for her race related post, but only terminated her employment after alleging that she also violated other company policies.

18.

After Ms. Taylor confirmed seeing the racially related post on Ms. Nguyen's Facebook page, Ms. Nguyen submitted to Defendant a screenshot of a Facebook post that she alleged came from Ms. Taylor's Facebook timeline.

19.

In the screenshots, Ms. Taylor was alleged to have enthusiastically announced that Ms. Nguyen was terminated.

20.

Ms. Taylor denied having knowledge of the post.

21.

Defendant was unable to find the post on Ms. Taylor's Facebook page. Ms. Taylor was also unable to find any record of it on her timeline, trash, or recent activity.

22.

Despite the posts seemingly not to have come from her account, Ms. Taylor reported fraudulent activity to Facebook, in case her account had been hacked.

23.

Unlike Ms. Nguyen's post, the alleged post celebrating Ms. Nguyen's termination was never proven to have been seen on Ms. Taylor's timeline by anyone other than Ms. Nguyen.

24.

While looking through Ms. Taylor's Facebook posts, Defendant came across some political posts that it deemed to be in violation of its Social Media Policy.

25.

On or about January 6, 2021, Ms. Perry and Ms. Gaines met with Ms. Taylor, along with Manager of Corporate Security Operations Mark Lucas, via Zoom.

26.

The post was a cartoon image of Trump and now President Biden during a debate. Photoshopped over Trump is a Ku Klux Klan hood, and the moderator is saying to him, "Thank you Mr. President, for wearing your mask."

27.

Defendant told Ms. Taylor that it does not tolerate disrespectful, hateful, or discriminatory posts.

28.

Ms. Taylor's posts were political statements, but they were not hateful or discriminatory.

29.

`      In fact, her post was quite the opposite. It simultaneously made a statement about Trump's denial of the need for COVID protective measures, and that racial discrimination against African Americans was a systemic issue starting at the top, with the then president.

30.

Ms. Taylor admitted to posting the image to Facebook.

31.

Defendant told Ms. Taylor that her posts were not acceptable, and that it was important that she continue to contact Facebook about the post celebrating Ms. Nguyen's termination.

32.

To be clear, Defendant told Ms. Taylor that it was very important that she provide evidence of absence, or the non-existence of a post on her timeline. The fact that Defendant's own investigation failed to show that the post ever appeared on Ms. Taylor's page was not sufficient.

33.

On or about February 2, 2021, Ms. Taylor was notified of Defendant's decision to suspend her employment. When Ms. Taylor attempted to show that Caucasian employees were not being investigated or, if investigated, were not being terminated, Rita Saitgazina, General Manager of IFS Field Operations Southeast Region, told her that they were not interested in gathering information from her. Rather, they were merely handing her the suspension paperwork.

34.

On April 13, 2021, EO Manager Annelyse Sanders stated that Ms. Taylor's political posts were racially motivated. This was provided as a reason for Ms. Taylor's termination.

35.

The In-flight Conflict Resolution Panel (CRP) has full authority to reverse whatever decision Defendant makes regarding termination. However, when the

CRP requested Ms. Taylor's file, they were told that they would not provide it because she was terminated for a race-related reason.

36.

When Ms. Taylor informed Ms. Sanders that Human Resources was preventing her from appealing her termination to the CRP, Ms. Sanders first told her that CRP could not assist her because her termination was related to Defendant's Social Media Policy.

37.

Ms. Sanders then corrected herself and told Ms. Taylor that Social Media "in it of itself is not an exclusion from CRP. All questions relating to eligibility requirements for In-Flight CRP, should be directed to the CRP Gatekeepers."

38.

Brenda McAden, the Conflict Resolution Panel Gatekeeper, went back to Human Resources, but again was told that they would not give her Ms. Taylor's file.

39.

Ms. McAden also explained that she did not believe Ms. Taylor's post to be race related, and that had it not been for the implication of "racism," Ms. Taylor's termination could have been overturned by CRP.

40.

Moreover, Ms. McAden assured Ms. Taylor that her termination would have been overturned because of her stellar work record.

41.

Defendant's non-African American employees were not subject to such harsh punishments.

42.

For example, in June 2020, a Caucasian woman named Kevin Lee Jennings was terminated for racially motivated posts on Twitter. She had been posting racial sentiments for a while, complaints had been made, her posts were openly discussed among employees, but she was only terminated once the media became involved.

43.

On January 13, 2021, a Caucasian Delta employee posted a question to the Delta portal, "What is DELTA's stance on employees participating in last weeks [sic] riot in DCA? There are photos circulating on social media." The employee included a photo of another employee at the capitol riot. A Caucasian flight attendant, Susan Karr, responded, "It wasn't a riot . . . until Antifa showed up, it was peaceful protest which is every American right to do so." Upon information and belief, neither the Caucasian Delta employee nor Ms. Karr were terminated.

44.

Also in January 2021, Cyndee Emmer, a Caucasian woman, posted to Facebook a meme, comparing the Confederate flag, a swastika, and Trump's "Make America Great Again" hat. The Confederate flag was described as a "19th Century symbol of hatred and bigotry", the swastika was the "20th Century symbol of hatred and bigotry" and the Trump hat was the "21st Century symbol of hatred and bigotry." Upon information and belief, Ms. Emmer was not terminated.

45.

In July 2021, after Defendant added political posts to the types of posts banned by its Social Media Policy, Caucasian employee Starr Collette posted an image with the words, "No country can survive being ruled by people who hate it – Tucker Carlson" and "Repost if you agree with Tucker Carlson". Around the text were images of Latina congresswoman Alexandria Ocasio-Cortez, openly gay Secretary of Transportation Pete Buttigieg, Muslim congresswoman Ilhan Omar, Palestinian congresswoman Rashida Tlaib, and Jewish senator Bernie Sanders. Upon information and belief, Ms. Collette was not terminated.

46.

Flight Attendant Starr Collette (Collette Perrella) also posted an image of African American boys being hosed down by the police with water from a fire

hose. She included the caption, "THIS WILL WORK!" Other employees complained and reported the post to Defendant. She was allowed to take down the post and was not terminated.

47.

Ms. Taylor also knew that when African American employees were managed by African American managers, the punishments were less severe.

48.

For example, when African American employee Wendy Summerlin was reported for racially related posts, she told her African American managers of white employees who had all also made racially related posts. Her managers were African American and they simply told her to go back to work.

49.

Robert Levine is one of the white employees that Ms. Summerlin named to management because there had been complaints about his racist posts. As a Purser, his qualification would have been the first thing he would have lost when placed on probation. Therefore, Ms. Taylor believes he too was never disciplined.

## CLAIMS FOR RELIEF

## COUNT I:  RACE DISCRIMINATION VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

50.

Plaintiff reincorpoates by reference paragraphs 10-49 of this Complaint by this reference as if fully set forth herein.

51.

Defendant's actions in subjecting Plaintiff to ongoing race discrimination constitute unlawful discrimination on the basis of Plaintiff's race (African American) in violation of Title VII.

52.

Defendant discriminated against Plaintiff because of her race willfully, wantonly, and in reckless disregard of Plaintiff's federally protected rights, and its discrimination against Plaintiff was undertaken in bad faith.

53.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her race.

54.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

55.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination and retaliation.

## COUNT II:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

56.

Plaintiff re-alleges paragraphs 10-49 as if set forth fully herein.

57.

Plaintiff engaged in protected activity under Title VII.

58.

Defendant subjected Plaintiff to adverse employment action (to wit, terminating Plaintiff's employment) because Plaintiff engaged in protected conduct. The adverse action to which Plaintiff was subjected would dissuade a reasonable employee from making or supporting a charge of discrimination.

59.

There was a causal connection between the protected conduct and the adverse action.

60.

As a direct and proximate result of Defendant's violations, Plaintiff has suffered economic and non-pecuniary damages.

61.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

62.

Plaintiff is entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest, reinstatement or front pay in lieu thereof, and any other relief available under the law.

## **COUNT III: VIOLATION OF 42 U.S.C. § 1981**

63.

Plaintiff re-alleges paragraphs 10-49 as if set forth fully herein.

64.

Defendant subjected Ms. Taylor to discrimination on the basis of her race (African American).

65.

Defendant intentionally discriminated against Plaintiff, on the basis of Plaintiff's race/color, in violation of 42 U.S.C. § 1981.

66.

Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 by not hiring Plaintiff because of his race/color.

67.

Defendant treated Plaintiff differently than at least one other employee outside of Plaintiff's protected class. Any alleged non-discriminatory reason given by Defendant for treating Plaintiff differently than another employee outside of Plaintiff's protected race class is pretext for unlawful discrimination.

68.

Defendant's actions in subjecting Ms. Taylor to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. section 1981.

69.

The effect of the conduct was to deprive Ms. Taylor of economic opportunities, and otherwise adversely effect Ms. Taylor's status as an employee, because of her race.

70.

As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered damages, including lost wages, emotional distress, humiliation and other indignities

71.

As a direct and proximate result of Defendant's unlawful employment practices, Ms. Taylor has been embarrassed, humiliated and has suffered damage to her emotional health, and has lost back pay and front pay.

72.

The acts and omissions of Defendant were willful, malicious and in reckless disregard of Plaintiff federally protected rights entitling Plaintiff to punitive damages.

73.

Defendant has willfully and wantonly disregarded Ms. Taylor's rights, and Defendant's discrimination against Ms. Taylor was undertaken in bad faith.

74.

Defendant chose not to take appropriate remedial steps to prevent or correct the discrimination.

## COUNT IV:  RETALIATION IN VIOLATION OF 42 U.S.C. §1981

75.

Plaintiff re-alleges paragraphs 10-49 as if set forth fully herein.

76.

Plaintiff is African American. Plaintiff had an employment agreement with Defendant within the meaning of 42 U.S.C. § 1981, under which, inter alia, Plaintiff worked for Defendant, and Defendant compensated Plaintiff for work.

77.

Plaintiff performed her contractual obligations.

78.

Defendant violated Plaintiff's rights under 42 U.S.C. § 1981.

79.

Plaintiff is a member of a protected class.

80.

Plaintiff's complaints and opposition to racist conduct constitute protected activity under 42 U.S.C. § 1981.

81.

Defendant subjected Plaintiff to adverse action (to wit, termination) because of her protected conduct. The adverse action to which Plaintiff was subjected would dissuade a reasonable employee from making or supporting a charge of discrimination.

82.

There was a causal connection between the protected conduct and the adverse action of termination.

83.

As a direct and proximate result of Defendant's violations, Plaintiff has suffered economic and non-pecuniary damages.

84.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

85.

Plaintiff is entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest, reinstatement or front pay in lieu thereof, and any other relief available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Special damages for lost wages;

(c)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)     All other relief to which she may be entitled.

[*Signature on following page*]

Respectfully submitted the 8th day of August 2022.

**BARRETT & FARAHANY**

*/s/ Catherine Gavrilidis*

Catherine Gavrilidis
Georgia Bar No. 565343
John E. Tomlinson
*Pro Hac Vice Application*
*Forthcoming*

P.O. Box 530092
Atlanta, Georgia 30353
404-214-0120
catherine@justiceatwork.com
john@justiceatwork.com